UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**FOR PUBLICATION**

----------------------------------------------------------x

Chapter 11

In re: Erica Itzhak,

Case No.: 24-10669 (JPM)

                Debtor.

----------------------------------------------------------x

Erica Itzhak,

                Plaintiff,

        -v-

Adv. Pro. No. 25-01029 (JPM)

Yossef Kahlon,

                Defendant.

----------------------------------------------------------x

*APPEARANCES:*

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Plaintiff Erica Itzhak*
1350 Broadway, 11th Floor
New York, NY 10018
By:    Scott S. Markowitz

**DARROW EVERETT, LLP**
*Attorneys for Defendant Yossef Kahlon*
1 SE 3rd Ave, Ste #2520
Miami, FL 33131
By:    David Harris Haft

## <u>Memorandum Opinion And Order</u>

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I.   INTRODUCTION

This is an adversary proceeding (the "**Adversary Proceeding**") arising in the bankruptcy case *In re: Erica Itzhak*, Case No. 24-10669.  (Docket No. 80).[1]  On February 4, 2025, Plaintiff filed *Debtor's Complaint To Avoid Transfer Pursuant to 11 U.S.C. § 547* (the "**Complaint**").  (Adv. Docket No. 1).  The Complaint seeks to avoid, as a preferential transfer, a pre-petition lien on cooperative shares (the "**Shares**") owned by Plaintiff/Debtor Erica Itzhak ("**Plaintiff**") related to the property located at 345 East 56th Street, Apt. 4D, New York, NY 10022 (the "**Property**").

On March 7, 2025, Yossef Kahlon ("**Defendant**") filed the *Notice of Motion to Dismiss* [Adv. Docket No. 5] and *Defendant's Memorandum of Law In Support Of Motion to Dismiss Adversary Complaint* [Adv. Docket No. 6] (collectively, the "**Motion to Dismiss**").  The Motion to Dismiss seeks dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

On March 31, 2025, Plaintiff filed *Plaintiff's Opposition to Motion to Dismiss and Cross Motion for Summary Judgment* (the "**Summary Judgment Motion**").  (Adv. Docket No. 8).  The Summary Judgment Motion argues that: (1) the Motion to Dismiss should be converted to a motion for summary judgment pursuant to Rule 12(d); and (2) summary judgment should be granted in

---

[1] References to "Docket No." are to filings entered in the bankruptcy case *In re: Erica Itzhak*, Case No. 24-10669 (April 19, 2024).  References to "Adv. Docket No." are to filings entered in the adversary proceeding *Erica Itzhak v. Yossef Kahlon*, Case No. 25-01029 (February 4, 2025).

References to "Rule __" are to the Federal Rules of Civil Procedure.  References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure.  References to "Local Rule" are to the Local Bankruptcy Rules for the Southern District of New York.  References to "Bankruptcy Code" are to Title 11 of the U.S. Code (11 U.S.C.).  References to "Section 547" are to 11 U.S.C. § 547.

favor of Plaintiff based on a finding that the lien is a "preferential transfer" under Section 547(b). (*Id.*). In support of the Summary Judgment Motion is *Plaintiff's Statement of Undisputed Facts Pursuant to LBR 7056-1* (the "**Statement of Undisputed Facts**"). (Adv. Docket No. 9).

On June 17, 2025, Defendant filed *Defendant Yossef Kahlon's Memorandum of Law In Opposition To Plaintiff's Cross-Motion For Summary Judgment* (the "**Summary Judgment Opposition**"). (Adv. Docket No. 14).

On June 26, 2025, Plaintiff filed *Plaintiff's/Debtor's Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment* [Adv. Docket No. 15] (the "**Plaintiff's Reply**"), together with a *Declaration in Support of Summary Judgment Motion* [Adv. Docket No. 16] (the "**Plaintiff's Declaration**").

For the reasons set forth below, the Court finds that the lien obtained by Defendant on February 15, 2024 constitutes a preferential transfer under Section 547(b), and the Court thus GRANTS the Summary Judgment Motion and DENIES the Motion to Dismiss.

## II.    <u>JURISDICTION</u>

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## III.    <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

Plaintiff is a licensed attorney residing in New York. (Complaint, ¶ 4). In March 2016, Defendant Kahlon commenced an action for legal malpractice against Itzhak, styled *Yossef Kahlon, et. al. v. Erica T. Yitzhak, et. al.*, Case No. 24-5383, in the Supreme Court of the State of New York, County of Nassau (the "**State Court**"). (Statement of Undisputed Facts, ¶ 1). On April 29, 2022, the State Court granted summary judgment in favor of Defendant Kahlon on the malpractice claim

and entered a judgment for over $1.5 million against Itzhak (the "**State Court Judgment**" or

"**Judgment**").  (*Id.* at ¶ 2).  On February 15, 2024, Defendant Kahlon delivered an "Execution

With Notice to Garnishee" to the Sheriff thereby enforcing the Judgment and creating a lien against

the Shares related to the Property (the "**Lien**").  (*Id.* at ¶ 3); (*see also* Summary Judgment Motion,

Exhibit A).

Less than 90 days later, on April 19, 2024 (the "**Petition Date**"), Plaintiff filed a petition

for relief under Chapter 13 of the Bankruptcy Code (the "**Bankruptcy Proceeding**").  (Docket

No. 1).  On July 1, 2024, the Chapter 13 case was converted to one under Subchapter V of Chapter

11 of the Bankruptcy Code.  (Docket No. 36).  Thereafter, the Plaintiff/Debtor filed the instant

Complaint in the Adversary Proceeding.  (Adv. Docket No. 1).

## IV.    <u>THE PARTIES' ARGUMENTS</u>

In the Complaint, Plaintiff/Debtor argues that the Lien should be avoided as a preference

under Section 547(b).  (Complaint, ¶ 25).  As discussed above, Plaintiff alleges that the preferential

transfer occurred within 90 days of the Petition Date.  (*Id.* at ¶ 19).  Plaintiff asserts that a "pre-

petition transfer" occurred under Section 101(54) when Defendant delivered the Execution With

Notice to Garnishee to the Sheriff to secure Defendant's interest in the Shares.  (*Id.* at ¶¶ 15, 20,

citing Exhibit A, Execution With Notice to Garnishee).  Plaintiff also asserts that the transfer was

on account of an antecedent debt owed by Plaintiff/Debtor to Defendant and was made while the

Debtor was insolvent.  (*Id.* at ¶¶ 21, 22).  Plaintiff further asserts that the transfer was made to and

for the benefit of Defendant and enabled Defendant to "receive more than Defendant would have

received" if the case were a Chapter 7 and if the transfer had not been made.  (*Id.* at ¶¶ 18, 23).

In the Motion to Dismiss, Defendant argues that "under New York law, Defendant's

judgment lien [was] perfected at the time the judgment was entered on April 29, 2022 . . . ."

(Motion to Dismiss, p. 1).  Defendant further argues that the "delivery of the execution to the Sheriff merely continued the perfection" of the Judgement from April 29, 2022, and thus the transfer falls outside of the 90-day preference window prescribed by Section 547.  (*Id.*).  Defendant further argues that if the Lien constitutes a preferential transfer, it is nonetheless excepted from avoidance under the "contemporaneous exchange exception" in Section 547(c) because the Lien secured personal property that Defendant Kahlon had already acquired.  (*Id.* at pp. 4-5).

As set forth in the Court's Scheduling Order [Adv. Docket No. 11], at a pre-trial status conference held on March 25, 2025, the Court "authorized the Debtor, as Plaintiff, to convert the [M]otion to [D]ismiss to a motion for summary judgment" and required Plaintiff to file her motion for summary judgment by April 1, 2025. The Defendant Kahlon was to file any objection to the Summary Judgment Motion by April 8, 2025.  (Docket No. 11).  After Defendant failed to file an objection by April 8, 2025, the Court further directed any objections to be filed no later than June 5, 2025, and any reply papers to be filed no later than June 13, 2025.  (*Id.*).

In the Summary Judgment Motion, Plaintiff argues that there is no factual dispute relevant to the Court's determination of whether the Lien constituted a preferential transfer under Section 547, and that each element of Section 547 has been satisfied.  (Summary Judgment Motion, p. 5). Plaintiff argues that under the Bankruptcy Code, the "creation of a lien" (as prescribed by New York law) constitutes a "transfer."  (*Id.* at ¶ 14).  Arguing that the Lien is a transfer pursuant to Section 547, Plaintiff asserts that summary judgment is warranted because: (1) the transfer occurred within the 90-day window preceding the Petition Date; (2) the transfer was made for the benefit of Defendant, enabling him to enforce the Judgment; 3) the transfer was made on account of an antecedent debt (the Judgment) owed by Plaintiff to Defendant; (4) the transfer was made while the Plaintiff was insolvent; and (5) the transfer enables Defendant to recover more "than if

the Transfer had not been made" as a now-secured versus an unsecured creditor. (*Id.* at ¶ 15).

Plaintiff also argues that Defendant's reliance on the "contemporaneous exchange exception"

under Section 547(c) is misplaced because the transfer did not secure "new value" as part of a

contemporaneous contract or transaction. (*Id.* at ¶ 16).

In the Summary Judgment Opposition,[2] Defendant asserts that Plaintiff has failed to meet

her burden to prevail on summary judgment because Plaintiff has not satisfied the elements for

avoidance of a transfer under Section 547(b). (Summary Judgment Opposition, p. 4). Defendant

argues that Plaintiff was solvent at the time of the transfer because the initial schedules filed in

Plaintiff's Bankruptcy Proceeding showed assets exceeding liabilities by approximately

$4,600,000. (*Id.* at pp. 6-7). Consequently, Defendant claims that the burden shifted to Plaintiff

to show that she was insolvent at the time of the creation of the Lien, which Defendant argues

Plaintiff has not done. (*Id.*). Defendant also argues that Plaintiff failed to show that the transfer

enabled Defendant to receive more than in a Chapter 7 liquidation. (Summary Judgment

Opposition, p. 6). Specifically, Defendant argues that there is a lack of evidence as to: (1) the

value of the Shares; (2) the presence of any lien with equal or senior priority; and (3) the extent to

which the value of the Shares in the Property would be exempted under Section 522. (*Id.* at p. 6).

Defendant asserts that without such evidence, Plaintiff cannot establish that Defendant would

receive more as a secured creditor than an unsecured one in a Chapter 7. (*See id.*).

In the Reply, Plaintiff asserts that Defendant's insolvency analysis failed to rely upon the

amended schedules filed by Debtor on June 24, 2025 (the "**Amended Schedules**"). (Plaintiff's

Reply, p. 2); (Schedules A/B, Summary of Assets and Liabilities, Docket Nos. 10, 14). Plaintiff

---

[2] On June 11, 2025, Defendant filed a *Letter* requesting an extension of time until June 13, 2025 to file an opposition
to the Motion for Summary Judgment. (Adv. Docket No. 13). The Summary Judgment Opposition was filed on
June 17, 2025.

also argues that courts have held that parties cannot rely on a "debtor's schedules and the book values listed therein" to rebut the presumption of insolvency. (*Id.* at ¶ 7, citing *In re Big Apple Volkswagen LLC*, No. 11-11388, 2016 Bankr. LEXIS 834, at *33 (Bankr. S.D.N.Y. March 17, 2016)). Plaintiff asserts that the Amended Schedules reflect liabilities exceeding assets by over $1.5 million. (Amended Schedules, Docket No. 97). In the Plaintiff's Declaration, Plaintiff states that the figures in the initial schedules contained significant errors with respect to a life insurance policy and a legal malpractice claim filed by Plaintiff against third parties. (Plaintiff's Declaration, p. 1). With respect to the insurance policies, Plaintiff claims to have failed to account for the cash surrender value of the two policies totaling $70,000, which is significantly less than the $2.5 million listed in the initial schedules. (Plaintiff's Declaration, p. 2). With respect to the malpractice claims, Plaintiff removed those that are still pending and thus are, arguably, of no clear value or confirmed existence, as well as the sole resolved claim for which she has been "unable to collect even one cent." (*Id.*).

In response to Defendant's argument that the Lien will not enable Defendant to receive more than in a Chapter 7, Plaintiff asserts that "a secured or partially secured creditor fairs better than a wholly unsecured creditor" where, as here, Plaintiff is insolvent. (Plaintiff's Reply, p. 5).

## V.    LEGAL ANALYSIS & DISCUSSION

### A.    CONVERTING THE MOTION TO DISMISS TO A MOTION FOR SUMMARY JUDGMENT

Defendant filed the Motion to Dismiss pursuant to Rule 12(b)(6) for failure to state a claim. (Motion to Dismiss, p. 2). Plaintiff urged the Court to convert the Motion to Dismiss to one for summary judgment under Rule 12(d). (Summary Judgment Motion, p. 4). Under Rule 12(d), made applicable by Bankruptcy Rule 7012, a court must convert a motion to dismiss for failure to state a claim into one for summary judgment if "matters outside the pleading are presented to and

not excluded by the court."  Rule 12(d); *see also Shafir v. Continuum Health Partners, Inc.*, 57 F.Supp.3d 325, 327 (S.D.N.Y. 2014).  Courts consider evidence "that goes beyond the four corners of [a party's] complaint" to satisfy the Rule 12(d) requirement.  *Abbott Labs v. Frank*, No. 17-6002, 2018 U.S. Dist. LEXIS 235216, at *3 (Bankr. E.D.N.Y. July 2, 2018).  Rule 12(d) further states that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Rule 12(d).  As discussed *supra*, the Court held a pre-trial conference on March 25, 2025 and entered a Scheduling Order "authoriz[ing] the Debtor, as Plaintiff, to convert the motion to dismiss to a motion for summary judgment and requir[ing] the Debtor to file her summary judgment motion by April 1, 2025 . . . ."  (Adversary Docket No. 11).  Subject to the Court's direction at the pre-trial conference, Plaintiff filed the Summary Judgment Motion.  (*See generally* Adversary Docket).  Defendant did not object to conversion of the Motion to Dismiss to one for summary judgment at the March 25, 2025 pre-trial conference nor in Defendant's late-filed Summary Judgment Opposition.  (*See* Summary Judgment Opposition, pp. 3-4).

## B.  <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).[3]  The burden is on the moving party to show that he or she is entitled to summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  In analyzing a motion for summary judgment, courts must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party.  *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).  Summary judgment is generally unwarranted

---

[3] Rule 56 is made applicable in this adversary proceeding by Bankruptcy Rule 7056.

if a reasonable jury could return a verdict in favor of the non-moving party.  *See Anderson*, 477 U.S. at 248.

### C.  SUMMARY JUDGMENT IS WARRANTED AS THERE IS NO GENUINE ISSUE OF MATERIAL FACT REGARDING THE ELEMENTS OF THE SECTION 547(b) CLAIM

Plaintiff argues that there is "no genuine dispute as to any material fact" and that she is entitled to judgment as a matter of law because the elements of an avoidable preferential transfer under Section 547(b) have been satisfied.  (Summary Judgment Motion, ¶¶ 14, 15).

Under Section 547(b), a trustee may avoid, except as provided under subsection (c), any transfer of an interest in property: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before the date of the transfer; (3) made while the debtor was insolvent; (4) made within 90 days prior to the commencement of the bankruptcy case; and (5) that enables the creditor to receive more than the creditor would otherwise have received in a Chapter 7 case, if the transfer had not been made, and if "such creditor received payment of such debt to the extent provided by [Section 101]."  *See* 11 U.S.C. § 547(b).  In a Chapter 11 case, the party bringing the preference action generally has the burden of proving each element by a preponderance of the evidence.  *In re Roblin Indus., Inc.*, 78 F.3d 30, 34 (2d Cir. 1996).  However, Section 547(f) establishes a presumption of insolvency during the 90-day period preceding the petition date, which shifts the burden to the party opposing avoidance.  *Id.*; *see also* 11 U.S.C. § 547(f).

### i.    The Creation Of The Lien Constitutes A "Transfer"

The Court will first address whether a "transfer" took place for purposes of Section 547(b). Plaintiff argues that "[t]he creation of a judgment lien is a transfer" pursuant to Section 101(54) of the Bankruptcy Code, which defines "transfer" to include "creation of a lien."  (Summary

Judgment Motion, ¶ 15).   Defendant asserts that the "Complaint fails to state a claim for a preferential transfer" because no transfer occurred.  (Motion to Dismiss, p. 3).  Defendant argues that the delivery of the Execution With Notice to Garnishee to the Sheriff on February 15, 2024 "did not constitute a 'transfer' of the Debtor's property" because it "merely continued the perfection of a *pre-existing* security interest" under Section 547(e)(1)(B).  Defendant argues that the State Court Judgment was perfected when it was entered on April 29, 2022.  (Motion to Dismiss at pp. 1, 3) (emphasis added).

Here, the Court agrees with Plaintiff that the transfer occurred on February 15, 2024, when Defendant delivered the Execution With Notice to Garnishee to the Sheriff, thus establishing the Lien.  The Court disagrees with Defendant's contention that perfection occurred when the Judgment was entered on April 29, 2022.  (Summary Judgment Motion, ¶ 14); (s*ee also* Motion to Dismiss, p. 4).  Section 547(e)(2) discusses when a "transfer" has occurred:

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time, except as provided in subsection (c)(3)(B);
> (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days;
> (C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—
>> (i) the commencement of the case; or
>> (ii) 30 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2).

The Bankruptcy Code includes the "creation of a lien" in the definition of "transfer."  11 U.S.C. § 101(54)(A).  Courts look to state law to determine whether a judgment or security interest is perfected.  *See In re Ideal Mortgage Bankers, Ltd.*, 539 B.R. 409, 427 (Bankr. E.D.N.Y. 2015) (determining that federal courts historically look to state law to determine whether a creditor's security interest or judgment lien is perfected); *see also In re Marceca*, 129

B.R. 369, 371 (Bankr. S.D.N.Y. 1991) (determining that a creditor's interest in property of the estate must be determined under New York law).  Here, New York law thus determines when a judgment lien is created or perfected for purposes of Section 547(e)(2).  Under New York law, "[w]here a judgment creditor has delivered an execution to a sheriff, the judgment creditor's rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property."  N.Y. C.P.L.R. § 5202(a).  In short, New York law provides that a judgment creditor "remains an unsecured creditor . . . until 'execution' is delivered to the sheriff . . . ."  (Summary Judgment Motion, ¶ 14); *see In re Lucasa International, Ltd.*, 13 B.R. 596, 599 (Bankr. S.D.N.Y. 1981) ("Under New York law, a judgment becomes a lien on personalty when the execution is delivered to the sheriff.") (internal citations omitted).  In the present case, the "transfer" occurred when the Judgment was "perfected" and the Lien was created under New York law.  (Complaint, ¶ 15).  As discussed *supra*, this occurred when Defendant Kahlon delivered the Execution With Notice to Garnishee to the Sheriff on February 15, 2024.  (Complaint, ¶ 15).

Defendant argues that perfection occurred earlier under Section 547(e) and New York state law.  (Motion to Dismiss, p. 4).  The Court disagrees with Defendant.  Defendant relies on *In re Pandeff*, which supports Plaintiff's argument that the creation of the Lien on February 15, 2024 under New York law is the relevant "transfer."  In *In re Pandeff*, the court determined that a "judgment creditor must either execute on the judgment or obtain an enforcement order" to create a lien under New York law.  *In re Pandeff*, 201 B.R. 865, 874 (Bankr. S.D.N.Y. 1996) (internal citation omitted).  Additionally, Section 547(e) incorporates state law "perfection" standards as the benchmark for determining when a "transfer" has occurred.  *See In re*

*Firstbase.io, Inc.*, 670 B.R. 694, 697-8 (Bankr. S.D.N.Y. 2025) (finding that N.Y. C.P.L.R. §

5202(a) establishes when a judgment creditor's rights in personal property are considered

secured for purposes of Section 547(b)).  In fact, Defendant appears to agree that the Lien was

perfected by asserting that the State Court Judgment "was simultaneously perfected for purposes

of Section 547(e)(1)(B) when the Defendant delivered the execution to the Sheriff," on February

15, 2024 and "Defendant became the holder of rights with respect to Debtor's cooperative

shares." (Motion to Dismiss, p. 4).  Defendant fails to justify his assertion that perfection

occurred earlier in April 2022.  (*Id.*).  Also, Defendant states that "on February 15, 2024,

Defendant delivered an [E]xecution [W]ith [N]otice to [G]arnishee to the Sheriff, *thereby*

*creating a lien*." (Summary Judgment Opposition, p. 2) (emphasis added).  Therefore, the Court

finds that the transfer took place on February 15, 2024 – when the Lien was created.

> ### ii. <u>Defendant Has Not Established That An Exception To Avoid The Transfer Applies</u>

Defendant argues that "[e]ven if the Court were to find that the delivery of the execution

to the Sheriff constituted a transfer . . . such transfer would be protected by the contemporaneous

exchange exception set forth in [Section] 541(c)(3)." (Motion to Dismiss, p. 4).  Defendant asserts

that courts "have interpreted this exception to apply to situations where a creditor takes action to

perfect a security interest in property that the debtor has already acquired, so long as such action

is taken within the time frame prescribed by the statute."  (Motion to Dismiss, p. 4, citing *In re*

*Lazarus*, 478 F.3d 12, 18 (1st Cir. 2007)).

To the extent that the parties cite both Section 547(c)(1) and 547(c)(3), the Court notes that

the exceptions found in subsections (c)(1) and (c)(3) are distinct.  Under Section 547(c)(1), the

party claiming the exception must show that the exchange was "contemporaneous" and involved

"new value."  Section 547(c)(3) protects a creditor who obtains a purchase money security interest

from having that interest avoided as a transfer.  *See* Section 547(c)(1), (c)(3); *see also In re Reggiana Lighting USA Inc.*, No. 22-10436, 2025 Bankr. LEXIS 1526, at *7-8 (Bankr. S.D.N.Y. June 26, 2025) (distinguishing subsections (c)(1) and (c)(3)).

Section 547(c)(1) provides that the trustee may not avoid a transfer:

(1) to the extent that such transfer was—
(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange

Section 547(c)(1).

Section 547(c)(3) further provides that the trustee may not avoid a transfer:

(3) that creates a security interest in property acquired by the debtor—
(A) to the extent such security interest secures new value that was—
(i) given at or after the signing of a security agreement that contains a description of such property as collateral;
(ii) given by or on behalf of the secured party under such agreement;
(iii) given to enable the debtor to acquire such property; and
(iv) in fact used by the debtor to acquire such property; and
(B) that is perfected on or before 30 days after the debtor receives possession of such property;

Section 547(c)(3).

Defendant has the burden of proving the nonavoidability of a transfer under subsection (c). 11 U.S.C. § 547(g); *see also In re Waterford Wedgwood USA, Inc.*, 508 B.R. 821, 827 (Bankr. S.D.N.Y. 2014).  Defendant has failed to establish that there was any "new value" as contemplated under subsection (c)(1) or any security interest securing "new value" that was used to acquire property that will constitute collateral under subsection (c)(3).

First, Defendant cites to *In re Lazarus*, in which the First Circuit vacated the district court's judgment that had been entered in favor of the mortgage holder and against the trustee who was seeking to avoid the transfer, and remanded the case for further briefing related to Section 547(c).

13

(Motion to Dismiss, p. 4); *see also In re Lazarus*, 478 F.3d 12, 19 (1st Cir. 2007). *Lazarus* involved

the "contemporaneous exchange" exception under Section 547(c)(1). 478 F.3d at 17. *Lazarus* is

distinguishable from this case because the debtor in *Lazarus* entered into a refinanced mortgage

with a new creditor on "different terms than the original [mortgage] (or there would have been no

benefit to refinancing)." *Id.* at 16. The funds from the new mortgage were used to satisfy an

existing mortgage held by another creditor. *Id.* at 13. The First Circuit determined that the transfer

was "arguably . . . for new value" because the new loan was "used to pay off [the debtor's] debt"

on the existing mortgage and the new loan offered better terms than the original mortgage. *Id.* at

17. In this case, Defendant did not extend a loan to Plaintiff, nor did Defendant provide anything

of new value; rather, Defendant secured its interest by perfecting the Judgment and creating the

Lien on February 15, 2024, which did not confer "new value." (Complaint, ¶ 15); (*see also*

Summary Judgment Opposition, p. 2).

Second, as to Section 547(c)(3), Defendant failed to establish that this exception applies.

Section 547(c)(3) sets forth a multi-prong test for the purchase money security interest exception.

(Motion to Dismiss, pp. 4-5). Focusing on parts (iii) and (iv) of the multi-prong test, Defendant

argues that subsection (c)(3)(A) "provides that a trustee may not avoid a transfer 'that creates a

security interest in property acquired by the debtor to the extent such security interest secures new

value that was given to enable the debtor to acquire such property, and in fact was used by the

debtor to acquire such property.'" (*Id.*, quoting Section 547(c)(3)(A)). The "defense is only

applicable if the 'transfer' of a security interest is made to 'secure' the new value that is provided,

which means they must be part of the same contract or transaction." *See In re George G. Sharp,

Inc.*, No. 20-10590, 2022 WL 1714178, at *15 (Bankr. S.D.N.Y. May 25, 2022) (finding that

subsection (c)(1) and (3) do not apply when the security interest does not secure "new value" as

part of the same contract or transaction).  As discussed *supra*, Defendant Kahlon did not provide Plaintiff/Debtor with any "new value" in February 2024.  (Motion to Dismiss, p. 5); *see also In re Reggiana Lighting USA Inc.*, 2025 Bankr. LEXIS 1526, at *22 (determining that movant must successfully demonstrate that the lien secured new value).  Indeed, there was no "new value" given under Section 547(c)(3)(A)(i)-(iii), nor was there any new value that was in fact used by the Debtor to acquire such secured property under Section 547(c)(3)(A)(iv).  The Lien related to the State Court Judgment, while the Shares had been purchased using a mortgage issued by Quick Borrow Inc.  (Amended Schedule D, Docket No. 97, p. 2).  Nor was there any perfection of a security interest "on or before 30 days after the debtor receive[d] possession" of any property acquired by the debtor under Section 547(c)(3)(B).

Thus, Defendant has not met its burden to establish that any exception under Section 547(c)(1) or (c)(3) applies.

### iii.    The Transfer Was For The Benefit Of Defendant

Since the Court has found that the Lien was a transfer, and Defendant's argument under Section 547(c) fails, the Court will now address the elements under Section 547(b) for an avoidable transfer.

The first element under Section 547 is whether the transfer was made "to or for the benefit of a creditor."  11 U.S.C. § 547(b)(1).  A creditor is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  11 U.S.C. § 101(10)(A).  A "claim" is defined as any: "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an

equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5).

Here, Defendant became an unsecured creditor of Plaintiff after the State Court Judgment for over $1.5 million was issued in Defendant's favor on April 29, 2022 in a malpractice action where Defendant prevailed. (*See* Bankruptcy Proceeding, Proof of Claim No. 17-1). Defendant then perfected the Judgment, and created the Lien on February 15, 2024, which created a "right to payment" owed by Plaintiff. (Statement of Undisputed Facts, ¶ 3). The Court agrees with Plaintiff that the Lien enabled the Defendant to enforce the Judgment with respect to the Shares, which Defendant does not dispute. (Summary Judgment Motion, ¶ 15); (*see generally* Summary Judgment Opposition). Where an unsecured claim becomes a secured one, the lien benefits the creditor to whom the obligation is owed. *See In re Flanagan*, 503 F.3d 171, 185-86 (2d Cir. 2007) (noting that under Section 547(b) where an unsecured obligation is replaced by a secured obligation, the payment is voidable as a preference to the extent of the collateral that was transferred). Thus, since the Lien was for the benefit of Defendant (the secured creditor), this element is satisfied.

### iv.    The Transfer Was On Account Of Antecedent Debt

The second element under Section 547 is whether the transfer was made for or on account of an antecedent debt. 11 U.S.C. § 547(b)(2). A debt is considered "antecedent" if it was incurred prior to the transfer. *In re ContinuityX, Inc.*, 569 B.R. 29, 34 (Bankr. S.D.N.Y. 2017).

Here, the Lien was on account of an antecedent debt. (*See* Summary Judgment Motion, ¶ 15). The "antecedent debt" is the State Court Judgment entered against Plaintiff/Debtor on April 29, 2022, almost two years prior to the creation of the Lien. (Complaint, p. 3, ¶ 14); (Motion to Dismiss, ¶ 1 ("On April 29, 2022, Defendant obtained a judgment against the Debtor [Plaintiff] in

the amount of $1,503,013.70 in the Supreme Court of the State of New York.")). Thus, Defendant effectuated a transfer on account of the prior unsecured claim, the State Court Judgment. (Statement of Undisputed Facts, ¶ 3).

Therefore, the Lien was on account of an antecedent debt under Section 547(b)(2).

> **v.    Defendant Failed To Rebut The Presumption Of Insolvency Under Section 547**

The third element under Section 547 is whether the debtor-transferor was insolvent at the time of the alleged preferential transfer.  11 U.S.C. § 547(b)(3).  Insolvency is presumed during the 90 days preceding the petition date.  *See* 11 U.S.C. § 547(f); *see In re Kossoff PLLC*, No. 21-10699, 2025 Bankr. LEXIS 1706, at *24 (Bankr. S.D.N.Y. July 18, 2025) (finding that the opposing party failed to provide evidence to rebut the presumption under Section 547(f)).  The party challenging the presumption of insolvency bears the burden of proof and must "introduc[e] some evidence that the debtor was not in fact insolvent at the time of the transfer." *See In re Ames Dept. Stores, Inc.*, 470 B.R. 280, 283 (S.D.N.Y. 2012) (internal citations omitted).

Defendant argues that a genuine issue of fact exists as to Plaintiff's insolvency on February 15, 2024 (when the Lien was created), and points to Plaintiff's initial schedules filed in the Bankruptcy Proceeding (which reflect assets exceeding liabilities).  (Summary Judgment Opposition, p. 5).  Plaintiff argues that those schedules were filed when Debtor acted *pro se*, contained inaccurate information, and were corrected in the Amended Schedules (which were subsequently filed with the assistance of counsel).  (Plaintiff's Reply, p. 2, ¶¶ 4, 5); (Plaintiff's Declaration, pp. 1-2, ¶¶ 2-9).

The Court agrees with Plaintiff that there is a rebuttable presumption of insolvency that Defendant has failed to overcome.  The only information Defendant relied on to attempt to rebut the presumption of insolvency was Debtor's initial outdated schedules.  (Summary Judgment

17

Opposition, pp. 5-6). Plaintiff asserts that the initial schedules were not accurate as to valuation. (Plaintiff's Reply, ¶ 8). Plaintiff's Amended Schedules in the Bankruptcy Proceeding reflect that Plaintiff's liabilities ($2,836,833.79) far exceed the scheduled assets ($1,253,686.41). (Docket No. 97, Amended Schedules); (*see also* Plaintiff's Declaration, p. 3). As explained in her declaration, Plaintiff had made several mistakes in compiling the initial schedules, including mistakenly including the death benefit of two insurance policies, as opposed to the surrender value (which is $0 for one policy and $70,000.00 for the other). (Plaintiff's Declaration, pp. 2-3, ¶¶ 3-5). Further, bankruptcy courts have held that rebutting the presumption of insolvency requires evidence of value of assets at fair market value. *See In re Ames Dept. Stores, Inc.*, 470 B.R. at 284 (upholding the bankruptcy court's determination that a creditor failed to rebut the debtor's presumption of insolvency by relying on the book value listed on schedules rather than the fair market value of debtor's assets and therefore the creditor had failed to prove solvency during the preceding 90 days).

In *In re Ames*, the party rebutting the presumption had only relied on the debtor's "schedules of assets and liabilities" that reflected the book value, rather than anything establishing the fair market value of the assets; this reliance was "deemed insufficient to rebut the presumption of insolvency." *Id.* at 285 (internal citations omitted). Defendant has not provided any support for the argument that the assets listed on the Amended Schedules are not valued properly. (*See* Summary Judgment Opposition, p. 6). Instead, Plaintiff has supported the value of assets listed on the Amended Schedules by including in Plaintiff's Declaration a valuation as to such assets. (Plaintiff's Reply, ¶¶ 9-12). In Plaintiff's Declaration, Plaintiff states that she initially failed to account for the cash surrender value of two insurance policies totaling $70,000, significantly less than the $2.5 million listed in the initial schedules. (Plaintiff's Declaration, p. 2). Also, Plaintiff

establishes that the malpractice claims listed are of essentially no clear value.  (*Id.*).  Defendant has thus not presented evidence to rebut the presumption that Plaintiff/Debtor was insolvent on February 15, 2024 based on the Amended Schedules.  (*See* Adversary Case Docket); *see also In re Coco*, 67 B.R. 365, 371 (Bankr. S.D.N.Y. 1986) ("[I]t is incumbent upon the transferee to come forward with some evidence to rebut the presumption").

### vi.    **The Transfer Occurred Within 90 Days Before The Petition Date**

The fourth element under Section 547(b) is whether the transfer was "made on or within 90 days before the petition date; or between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider."  11 U.S.C. § 547(b)(4).

Here, the transfer was "made on or within 90 days" before the Petition Date.  The parties do not dispute that Defendant delivered the Execution with Notice to Garnishee to the Sheriff on February 15, 2024.  (Summary Judgment Motion, Exhibit A); (Summary Judgment Opposition, p. 2).  As discussed *supra*, Section (V)(C)(i), the transfer thus occurred on February 15, 2024 when the State Court Judgment was secured and the Lien was created.  The Petition Date (April 19, 2024) was sixty-four days after the creation of the Lien, and thus the transfer occurred within the prescribed 90-day window.  (*See* Docket No. 1).

### vii.    **The Transfer Enabled Defendant To Receive More Than He Otherwise Would**

The fifth element under Section 547(b) is whether the transfer enabled the creditor to receive more than the creditor would have received if the case were a Chapter 7 case, if the transfer had not been made, and if such creditor had "received payment of such debt to the extent provided by the provisions of this title."  11 U.S.C. § 547(b)(5).  In making this determination, courts must "construct a hypothetical chapter 7 case and determine the percentage distribution that the defendant would have received on the petition date."  *In re Teligent Inc.*, 380 B.R. 324, 339 (Bankr.

S.D.N.Y. 2008).  In *In re Teligent Inc.*, the court found that this element is satisfied "whenever the plaintiff shows that the creditor would receive less than 100% in a hypothetical chapter 7 distribution."  *Id*.  Courts should not focus on other sources of recovery available to a transferee, but rather what such transferee would hypothetically receive vis-à-vis other creditors within such creditor's particular class.  *See In re Pameco Corp.*, 356 B.R. 327, 337 (Bankr. S.D.N.Y. 2006) (citing *Palmer Clay Products v. Brown*, 297 U.S. 227, 229 (1936)).

Defendant argues that Plaintiff has offered no evidence that Defendant receives more by enforcing the Lien than Defendant would receive as an unsecured creditor in a Chapter 7 case.  (Summary Judgment Opposition, p. 6).  Specifically, Defendant asserts that there is no evidence "regarding the value of the [] Shares subject to the Lien, the existence or amount of any liens senior to Defendant's Lien (e.g., a loan secured by the [] Shares), or the value of the Debtor's available exemptions that might apply to the [] Shares."  (*Id.*).

However, the Court finds that under 547(b)(5) the Lien enables Defendant to receive more than Defendant would receive in a Chapter 7 liquidation (on account of its Judgment) than if the transfer had not been made, as Defendant's security interest enables him to recover more than he would receive from a distribution among a class of unsecured creditors.  (*See* Summary Judgment Motion, ¶ 15).  The Amended Schedules in the main case disclose a total value of $700,000 for the Shares, of which $179,975.00 is claimed as exempt.  (Amended Schedules, Docket No. 97).  The same schedules also disclose the presence of one other lien on the Shares, a "mortgage" in the amount of $400,000 held by Quick Borrow Inc.  (Amended Schedules, Docket No. 97).  After deducting the exemption and Quick Borrow's lien, $120,025.00 of unexempted equity remains, and the Lien could attach to that value (which would make Defendant's claim secured by at least that amount).  (Amended Schedules, Schedule C, Schedule D).  Thus, although Defendant is

significantly under-secured, he is nonetheless secured to some degree, placing $120,025.00 of his claim recoverable at one hundred cents on the dollar above any general unsecured claim. And, since Plaintiff's liabilities exceed the value of the assets, a hypothetical Chapter 7 would yield less than a 100% recovery for general unsecured creditors. Without the Lien, Defendant would receive less than one hundred cents on the dollar with respect to his entire claim in a Chapter 7 case. With the Lien, Defendant would receive one hundred cents on the dollar with respect to at least a portion of the claim. Thus, Defendant would receive more as a secured creditor in a hypothetical Chapter 7 based on the value of the Shares.

Therefore, the last element of Section 547(b) is satisfied.

## VI.    CONCLUSION

In conclusion, for the reasons set forth above, the Court finds that the Motion to Dismiss [Adv. Docket Nos. 5, 6] is DENIED, and the Summary Judgment Motion [Adv. Docket No. 8] is GRANTED.

**IT IS SO ORDERED.**

Dated: New York, New York
      October 21, 2025                       /S/ John P. Mastando III_____
                                              HONORABLE JOHN P. MASTANDO III
                                              UNITED STATES BANKRUPTCY JUDGE